# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

January 3, 2013

Robert J. Tully, Esq.
Seigel, Tully & Furrer, LLC
501 Fairmount Avenue, Suite 100
Towson, MD  21286

Alex S. Gordon, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD  21201

      Re:  Daniel W. Muir v. Michael Astrue, etc.
          Civil No. SKG-11-2041

Dear Counsel:

Plaintiff, Daniel Muir, by his attorney, Robert Tully, filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied his claim for Disability Insurance Benefits ("DIB"), also known as Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act ("the Act").  This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.

Currently pending before the Court are cross motions for

1

summary judgment and plaintiff's request for remand in the alternative.  For the reasons that follow, the Court hereby DENIES plaintiff's Motion for Summary Judgment, DENIES defendant's motion for summary judgment, and REMANDS the case to the Commissioner for further proceedings consistent with this opinion.

**I.    Procedural History**

On March 24, 2008, plaintiff filed an application for DIB under Title II of the Act.  (R. 22).  Plaintiff alleged a disability onset date of October 1, 2007 for the DIB claim due to impairments resulting from right leg/foot pain and numbness; radiculopathy; herniated nucleus pulpous; bilateral carpal tunnel; bilateral renal cystic masses; and kidney problems.  (R. 107).  Plaintiff also alleged impairments from migraine headaches, attention deficit hyperactivity disorder (ADHD), and depression.  (R. 262, 267).

Plaintiff's application for DIB was denied initially and on reconsideration.  (R. 58-61, 63-64).  Thereafter, plaintiff had a hearing before ALJ Drew A. Swank on March 23, 2010 in Cumberland, MD.  (R. 34, 73).  On April 16, 2010, the ALJ issued an unfavorable written decision that plaintiff was not disabled within the meaning of the Act.  (R. 22-30).  On April 26, 2010,

plaintiff filed a request for review of the ALJ's decision.  (R.
18).  On June 27, 2011 the Appeals Council issued a denial of
plaintiff's request for review.  (R. 1).  As a result of the
Appeals Council's denial of plaintiff's request for review, the
ALJ's decision is the final decision of the Commissioner.  (R.
1).

## II.  Factual History

The Court has reviewed the Commissioner's Statement of
Facts and, finding that it accurately represents the record in
all material respects, hereby adopts it.  (ECF No. 16-1, 2-8).

## I.  ALJ Findings

Before evaluating plaintiff's claim for DIB, the Social
Security Act mandates that every individual meets the insured
status requirement for disability insurance benefits.  42 U.S.C.
423, Sec. 223(a)(1)(A).  The ALJ found that plaintiff meets the
insured status requirement for disability benefits through
December 31, 2011.  (R. 24).  In evaluating plaintiff's claim
for DIB, an ALJ is required to consider all of the evidence in
the record and to follow the sequential five-step evaluation
process for determining disability, set forth in 20 C.F.R. §
416.920(a).1  If the agency can make a disability determination

_____

1 Disability is defined in the Act as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical

at any point in the sequential analysis, it does not review the claim further.  20 C.F.R. § 1520(a).  After proceeding through all five steps, the ALJ in this case concluded that plaintiff was not disabled under the definition within the meaning of the Act.  (R. 22-30).

The first step requires plaintiff to prove that he or she is not engaged in "substantial gainful activity."2  20 C.F.R. § 416.920(a)(4)(I).  If the ALJ finds that plaintiff is engaged in "substantial gainful activity," plaintiff will not be considered disabled.  (R. 23).  Here, the ALJ determined the plaintiff had not engaged in substantial gainful activity since October 1, 2007.  (R. 24).  The ALJ thus continued to the second step of the process.  Id.

At the second step, the ALJ must determine whether the plaintiff has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" to limit the plaintiff's ability to perform basic work activities. 20 C.F.R. § 404.1520(c), 416.920(c).  There is also a durational

---

or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A) (2004).
2 Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 416.972.  Work activity is both substantial if it involves doing significant physical or mental activities and even if it is part-time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when he worked before.  20 C.F.R. § 416.972(b).  Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

requirement that the plaintiff's impairment last or be expected
to last for at least 12 months.  20 C.F.R. § 416.909.  An
impairment or combination of impairments is "not severe" when
medical and other evidence establish only a slight abnormality
or a combination of slight abnormalities that would have no more
than a minimal effect on an individual's ability to work.  20
C.F.R. § 404.1521; 416.921.  If the plaintiff does not have a
severe medically determinable impairment or combination of
impairments, then he or she is not disabled under the Act.
Here, the ALJ determined that the plaintiff has the following
severe impairments: (1) degenerative disc disease of the lumbar
spine and (2) migraine headaches.  (R. 24).  The ALJ determined
that the plaintiff's following impairments were non-severe in
nature: (1) carpal tunnel syndrome; (2) depression; and (3)
attention deficit hyperactivity disorder (ADHD).  (R. 25).  The
impairments were deemed "non-severe" as they did not "impose[]
more than a minimal effect on his ability to function."  (Id.).

At step three, the ALJ considers whether plaintiff's
impairments, either individually or in combination, meet or
equal an impairment enumerated in the "Listing of Impairments"
("LOI") in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §
416.920(a)(4)(iii).  In this case, the ALJ found that plaintiff
does not have an impairment or combination of impairments that

5

meets or medically equals one of the listed impairments in 20
C.F.R. § 404, Subpart P, Appendix 1.  (R. 25).

More specifically, the ALJ found that plaintiff's
degenerative disc disease of the lumbar spine did not meet or
equal any of the musculoskeletal listings in section 1.04
because there was no medical evidence of nerve root compression.
(Id.).  In support of that finding, the ALJ found that there was
no evidence of motor loss and straight leg raising test results
had been variable.  (Id.).  The ALJ then found that the
plaintiff did not meet any of the section 11.00 requirements
with regard to his migraines.  (R. 25-26).

Before the ALJ advances to the fourth step, he must assess
plaintiff's "residual functional capacity" ("RFC"), which is
then used at the fourth and fifth steps.  20 C.F.R. §
404.1520(a)(4)(e).  RFC is an assessment of an individual's
ability to do sustained work-related physical and mental
activities in a work setting on a regular and continuing basis.
SSR 96-8p.  The ALJ must consider even those impairments that
are not "severe."  20 C.F.R. § 404.1520(a)(2).  In determining a
plaintiff's RFC, ALJs evaluate the plaintiff's subjective
symptoms (e.g., allegations of pain) using a two-part test.
Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §
404.1529.  First, the ALJ must determine whether objective

evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments the claimant has received for his symptoms, medications, and any other factors contributing to functional limitations. (Id.).

The ALJ determined that plaintiff had the RFC to perform "the full range" of sedentary work as defined in 20 C.F.R. § 404.1567(a). (R. 26). Applying the two-step process for evaluating subjective symptoms, the ALJ found that "after careful consideration of the evidence . . . the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting
effects of these symptoms are not credible to the extent they
are inconsistent with the above residual functional capacity
assessment." (R. 27).

At the fourth step, the ALJ must consider whether plaintiff
retains the RFC necessary to perform past relevant work.  20
C.F.R. § 404.1520(e); 416.920(e).  Here, the ALJ determined that
the plaintiff is unable to perform any past relevant work as his
previous work as a commercial truck driver required lifting up
to 100 pounds. (R. 29).

If the claimant is unable to resume his past relevant work,
the ALJ proceeds to the fifth and final step of the sequential
analysis.  This step requires consideration of whether, in light
of vocational factors such as age, education, work experience,
and RFC, the claimant is capable of other work in the national
economy. 20 C.F.R. §§ 404.1520(g), 416.920(g)(2011). At this
step, the burden of proof shifts to the agency to establish that
the claimant retains the RFC to engage in an alternative job
which exists in the national economy.  McLain v. Schweiker, 715
F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d
1050, 1053 (4th Cir. 1980).  The agency must prove both the
claimant's capacity to perform the job, and that the job is in
fact available.  Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir.

1983).  Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show that he possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.

Before the agency may conclude that plaintiff can perform alternative skilled or semi-skilled work, it must show that plaintiff possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.  Here, the ALJ noted that "[t]ransferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills.'"  (R. 29).  Additionally, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id.  Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act from the alleged onset date through the date of her decision, and therefore, is not entitled to disability benefits.  (R. 30.)

**II.  Standard of Review**

9

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence—not to try plaintiff's claim *de novo*.  King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. § 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.  Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to

accept them.   Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.
1962).

Despite deference to the Commissioner's findings of fact,
"a factual finding by the ALJ is not binding if it was reached
by means of an improper standard or misapplication of the law."
Bowen, 829 F.2d 514, 517 (4th Cir. 1987).   The Court has
authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse
the decision of the agency "with or without remanding the case
for a rehearing."   Melkonyan v. Sullivan, 501 U.S. 89, 98
(1991).


**III. Discussion**

Plaintiff raises three arguments on appeal: (1) the ALJ
failed to properly grant controlling weight to plaintiff's
physician Dr. Manger, (2) the ALJ improperly analyzed
plaintiff's subjective complaints of pain; and (3) the ALJ
failed to present evidence from a vocational expert/consultant
prior to or in conjunction with his determination that plaintiff
has the RFC to perform the full range of sedentary work.   (ECF
No. 12-1, 6-14).   For the reasons set forth below, the Court
rejects plaintiff's argument no. 1.   As to argument no. 2, the
Court agrees that the ALJ properly analyzed plaintiff's
subjective complaints of pain in terms of his back and leg

condition but failed to explain his conclusion regarding his migraine headaches.  As to argument no. 3, ALJ consideration and explanation of the migraine headaches will necessarily result in re-evaluation of all subjective complaints, including migraines and re-evaluation of the need for a vocational expert.

## A. The ALJ Properly Weighed The Medical Opinion of Dr. Manger

As both plaintiff and defendant recognize, SSR 96-2p provides the framework for determining when a treating source medical opinion is entitled to controlling weight.  SSR 92-2p sets forth a four step framework.  The first step of the framework is that the opinion must "must come from a "treating source," as defined in 20 C.F.R. §§ 404.1502 and 416.902.'"  SSR 96-2p.  The next step is that the opinion provided must be a "medical opinion" as defined by 404.1527(a) and 416.927(a).3 SSR 96-2p.  The third step is that the ALJ must find that "the treating source's medical opinion is 'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques."  SSR 96-2p.  Lastly, the medical opinion is only given controlling weight if it is "not inconsistent with the other substantial evidence in the individual's case record."

---

3 A medical opinion is simply an opinion of the "nature and severity of an individual's impairment(s)."  SSR 96-2p.

(internal quotations omitted)   SSR 96-2p.

Plaintiff argues that the ALJ improperly rejected Dr. Manger's RFC assessment by incorrectly applying the provisions set forth in SSR 96-2p in evaluating whether or not to give a medical opinion controlling weight. Specifically, plaintiff alleges that the ALJ solely based his conclusion that Dr. Manger's opinion was not adequately supported by acceptable medical findings on a single entry in the RFC that states that Dr. Manger had last seen plaintiff in 2006.   (ECF No. 12-1, 9). According to plaintiff, the use of "an innocuous single entry as the entire basis for rejecting a treating source medical opinion is both capricious and contrary to SSR 96-2p." (ECF No. 12-1, 9).

Plaintiff also disagrees with the ALJ's description of Dr. Manger's patient summaries as "too sketchy to provide acceptable medical support for Dr. Manger's conclusions." (ECF No. 12-1, 10 (quoting R. 28)).  Plaintiff notes that the ALJ does not elaborate on his use of the term "sketchy" or identify which findings he did not deem credible.  (ECF No. 12-1, 10). Furthermore, plaintiff argues that the treating source's medical opinion is well supported by "medically acceptable clinical and laboratory diagnosis techniques." (ECF No. 12-1, 10).  Evidence for this assertion is that Dr. Manger identified a wide variety

13

of symptoms associated with plaintiff's migraines which he later identifies as associated with "impaired appetite/gastritis." (ECF No. 12-1, 10 (quoting R. 263)).  Symptoms include including vertigo, nausea and vomiting, malaise, photosensitivity, and mental confusion/inability to concentrate.  Id.  Because Dr. Manger's treatment notes include references for phone calls and visit summaries for various prescriptions, plaintiff argues that these items provided ample support for Dr. Manger's conclusions. (ECF No. 12-1, 10-11).

Defendant responds that the ALJ did not err in giving little credence to what defendant terms as "Dr. Manger's unduly restrictive opinion." (ECF No. 16-1, 11).  Defendant argues that the ALJ made his determination after contrasting Dr. Manger's opinion that plaintiff experiences 2-4 migraines per month, that last 4-8 hours each, with Dr. Manger's sparse treatment notes. (ECF No. 16-1, 11).  Defendant notes that while Dr. Manger states that plaintiff suffers occasionally from debilitating migraines, only three reports of migraines are recorded by Dr. Manger in the treatment notes submitted into evidence. (ECF No. 16-1, 11).  Additionally, defendant argues that the ALJ "correct[ly] characterized the evidence pertaining to migraines as 'sketchy.'" (ECF No. 16-1, 12).

Defendant notes that the wide variety of symptoms that Dr.

14

Manger identifies as being associated with plaintiff's migraines
are provided on the Headaches RFC Questionnaire and nowhere else
in the record.  (R. 262).  Lastly, the defendant argues that the
ALJ's reference to the fact that Dr. Manger advised that he had
last seen the plaintiff in 2006 on the Headaches RFC
Questionnaire was not used by the ALJ as the sole basis for
rejecting a treating source medical opinion. (ECF No. 16-1, 14).
Instead, the ALJ's reference to that fact was used to
demonstrate that plaintiff infrequently sought treatment from
Dr. Manger and when plaintiff did seek treatment from Dr.
Manger, that treatment was rarely for migraines.  (ECF No. 16-1,
14).

        The ALJ did not err in determining that Dr. Manger's
medical opinion was only entitled to limited weight.   Dr.
Manger's medical opinion undisputedly meets the requirements of
steps one and two. However, the ALJ found that contrary to the
requirement in the third step, Dr. Manger's opinion "is not
adequately supported by acceptable medical findings."4  (R. 28).
The ALJ found that the brief summaries of patient contacts were

_____

4 While plaintiff argues that the ALJ acknowledged that the medical opinion
was not inconsistent with other substantial evidence in the record, defendant
is correct in that the ALJ never stated this fact.  (ECF. No. 16-1, 13).  As
defendant notes, while the opinion acknowledges that plaintiff does suffer
migraines, the ALJ found that, based on all the evidence available, and in
accordance with his skeptical view of Dr. Manger's conclusions, that there
was nothing to suggest that those migraines were sufficiently debilitating to
prevent plaintiff from performing a full range of sedentary work.  (R. 28).

too "sketchy," or lacked sufficient detail, to support Dr.
Manger's conclusions.  (R. 267, 279).  In addition, the ALJ
noted that there were no medical records whatsoever between 2006
and December 2008, a time period including the first year after
plaintiff's alleged onset of disability.  (Tr. 268).  Finally,
as defendant notes, while Dr. Manger indicated that he had
"followed claimant for migraines since 1991" (R. 24), medical
reports summarizing treatment between December 1999 and February
2006 showed no complaint of migraines.  (ECF No. 16-1, 11).

    The ALJ's conclusion on this record is consistent with
Fourth Circuit precedent that where a doctor's notes provide
insufficient or contradictory support for their conclusions,
they are properly afforded less than controlling weight.  See
Forsyth v. Astrue, CIV.A. CBD-09-2776, 2011 WL 691581 (D. Md.
Feb. 18, 2011)(finding the ALJ properly declined to give an
opinion controlling weight in part because the doctor's
conclusions were inconsistent with his own medical records);
Cramer v. Astrue, 2011 U.S. Dist. LEXIS 102968 (D.S.C. Sept. 12,
2011)(ALJ was not required to give controlling weight to
treating physician opinions "that were based in large part on
the plaintiff's self-reported symptoms rather than clinical
evidence and that were not consistent with the doctor's own
treatment notes"); see generally 20 C.F.R. § 404.1527(c)(3)

16

(stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

Plaintiff's argument that the ALJ did not give Dr. Manger's medical opinion controlling weight solely because of a single entry is belied by the record.  The citation to the Headaches RFC Questionnaire was used by the ALJ not to demonstrate a misstatement as the plaintiff alleges, but rather to show the sparse treatment records produced by Dr. Manger.  Plaintiff takes the ALJ's statement regarding Dr. Manger's note on the Headaches RFC Questionnaire out of context.  When that statement is read in tandem with the rest of the paragraph provided, it becomes apparent that the ALJ is making a larger point about the lack of sufficient medical findings.  See (R. 28).

Accordingly, the ALJ appropriately found that the summaries provided by Dr. Manger did not provide sufficient evidence to evaluate whether there was a sound medical basis for his medical opinion.  (R. 28).

**B. The ALJ's Decision to Find Muir's Subjective Complaints Not Fully Credible Is Supported by Substantial Evidence As to Pain Related to His Back and Leg**

To evaluate subjective complaints of pain, the ALJ conducts

the analysis mandated by <u>Craig v. Chater</u>, 76 F.3d 585, 594-95
(4th Cir. 1996).  The ALJ must first find "objective medical
evidence showing the existence of a medical impairment(s) which
results from anatomical, physiological, or psychological
abnormalities and which could reasonably be expected to produce
the pain or other symptoms alleged."  <u>Id.</u> at 594.  After an
underlying impairment is found, "the intensity and persistence
of the claimant's pain, and the extent to which it affects
[plaintiff's] ability to work, must be evaluated."  <u>Id.</u> at 595.
To determine how the plaintiff's pain affects his ability to
work, the ALJ considers the plaintiff's history, the signs and
laboratory findings, and statements from plaintiff, the treating
or nontreating source, or other persons about how plaintiff's
symptoms affect him.  20 C.F.R. § 404.1529(c)(1).  The
guidelines provided by 20 C.F.R. § 404.1529(c)(3) mandate that
the ALJ also consider:

(i) plaintiff's daily activities;

(ii) The location, duration, frequency, and intensity of
plaintiff's pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any
medication plaintiff takes or have taken to alleviate
plaintiff's pain or other symptoms;

(v) Treatment, other than medication, plaintiff receives or has
received for relief of plaintiff's pain or other symptoms;

18

(vi) Any measures plaintiff's use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Plaintiff alleges that the ALJ did not properly analyze plaintiff's complaints of pain under the Craig analysis. Specifically, the plaintiff argues that the ALJ findings were "completely conclusory in nature" and misrepresent plaintiff's testimony. (ECF No. 12-1, 12). Additionally, plaintiff alleges that the ALJ improperly used the absence of plaintiff's need for surgery, and his use of over-the-counter medication, to cast doubt on plaintiff's claims of extreme pain and functional limitations.

In response, defendant argues that the ALJ properly found that the plaintiff's subjective complaints were not fully credible. Defendant notes the ALJ's citation to several different doctors in support of his finding that plaintiff's subjective complaints were not fully credible. The ALJ cited Dr. Russell's opinion that plaintiff's pain would impose no restrictions on activities such as sitting, standing/walking, lifting/carrying or handling. (R. 29). The ALJ also noted Dr. Figueroa's statement that he could not find an objective cause

for the plaintiff's pain.  (R. 29).  In addition, defendant
notes that the ALJ did not entirely disregard plaintiff's
testimony: the ALJ cited medical evidence that plaintiff could
perform light work, but, taking into consideration plaintiff's
"partially credible" subjective complaints of pain, limited
plaintiff to sedentary work.  (ECF No. 16-1, 15; R. 28).

   While plaintiff argues that the ALJ misrepresented the
plaintiff's remarks regarding his lifting capacity and his
ability to go shopping with his wife, the ALJ accurately
described plaintiff's testimony.  Plaintiff testified that he
will "sometimes" go to the market with his wife, but that he
does not "usually" make it through the entire store.  (R. 46).
In his opinion, the ALJ clearly stated that plaintiff's "daily
activities have included sometimes going grocery shopping with
his wife, although he cannot make it all the way through the
store." (R. 36).  Plaintiff testified that he could lift "no
more than 10 or 15 pounds." (R. 44).  In keeping with this
statement, the ALJ noted that "[t]he claimant said he cannot
lift more than 10-15 pounds," (R. 26), and on another occasion
stated that plaintiff "admitted that he could lift 10-15
pounds." (R. 27).  These statements faithfully reflect
plaintiff's testimony.  Further, it is proper for an ALJ to
consider a claimant's daily activities in weighing the

20

credibility of their statements regarding pain.  Mickles v.
Shalala, 29 F.3d 918, 921 (4th Cir. Va. 1994); 1-9 Social
Security Practice Guide § 9.03.

     In addition, the ALJ correctly cited to the plaintiff's use
of only over-the-counter pain medication as evidence that his
pain was not as severe as he alleged.  The ALJ stated that "the
claimant took only Ibuprofen for his back and leg pain." (R.
27).  As stated above, the guidelines provided by 20 C.F.R. §
404.1529(c)(3)(iv) mandate that the ALJ consider [t]he type,
dosage, effectiveness, and side effects of any medication
plaintiff takes or have taken to alleviate plaintiff's pain or
other symptoms . . . ."  The plaintiff's use of only over-the-
counter medication directly contradicted plaintiff's assertion
that he experiences pain amounting to a nine, on a scale from
zero, no pain, to ten, excruciating pain.  (R. 44).  In Mickles
v. Shalala, the Fourth Circuit cited the plaintiff's statement
that she was taking only "relatively mild over-the-counter
medication for her joint pain" and that "[t]he only "medication"
[plaintiff] takes for her ulcers is Rolaids" in concluding that
her testimony regarding her pain was not credible.  29 F.3d 918,
921 (4th Cir. 1994).   Use of only over-the-counter pain
medication is viable evidence that a plaintiff's testimony
regarding her pain was not credible.  Therefore, the ALJ

properly evaluated the plaintiff's use of only over-the-counter
medication to treat his pain.

The ALJ also did not err when he cited plaintiff's lack of
surgery as contradicting plaintiff's statements concerning the
intensity, persistence, and limiting effects of his symptoms.
(R. 27). To support his finding that plaintiff's complaints of
pain were not credible, the ALJ cited to fact that Dr. Augusto
Figueroa, Jr., a board certified neurological surgeon, did not
recommended any additional surgery. (R. 27). While plaintiff
argues to the contrary, Fourth Circuit precedent supports the
ALJ's finding that a lack of surgery may discredit a plaintiff's
complaints of pain. In Riffle v. Shalala, the Fourth Circuit
cited the fact that "[b]oth doctors acknowledged that no
objective findings existed to explain [plaintiff's] allegations
of pain" and "neither physician recommended that [plaintiff]
undergo surgery," as evidence to support the ALJ's discrediting
of the treating physician's claim that plaintiff was disabled.
47 F.3d 1165, at *3 (4th Cir. 1995) (unreported). Additionally,
this Court found in Battle v. Astrue, that no finding of
disability was warranted because plaintiff's doctor "had
recommended no further surgical intervention, but instead
recommended only 'continuing pain medication.'" No. PWG-09-
3281, 2011 WL 4048525, at *2 (D. Md. Sept. 8, 2011). The

absence of a need for surgery may be used to weigh the integrity of plaintiff's statements regarding his pain.  In this case, the ALJ properly relied on the absence of a need for surgery as evidence that the plaintiff's symptoms were not as serious as plaintiff alleged.

While the ALJ did not commit any error in his consideration and discussion of the effect of his pain resulting from his back and leg condition, he failed to explain his conclusion that "the claimant's migraine headaches would not prevent him from performing a full range of sedentary work on a sustained basis." (R. 28).  He did not discharge his duty of explanation.  As discussed supra, in making this determination the ALJ clearly and not inappropriately discounted Dr. Manger's medical opinion on the severity and frequency of his migraine condition.  (R. 28).  While the Court did not find any error in the ALJ's assignment of limited weight to Dr. Manger's medical opinions, that does not mean, of course, that the ALJ can ignore the reported facts of a condition and the treatment.  Dr. Manger, a treating source, stated that he had treated plaintiff since 1991, seeing plaintiff on an as-needed basis, apparently for migraines.  (R. 262).  When answering an RFC questionnaire for headaches, Dr. Manger wrote that the plaintiff suffered from 3-4 headaches a month which each lasted four to eight hours.  (R.

23

262-63).  Dr. Manger prescribed Maxalt (rizatriptan benzoate), a
migraine medication, which "helped some", according to Dr.
Manger.  (R. 264), but he gave plaintiff a "poor" prognosis (R.
265).

    At the hearing, plaintiff testified to more frequent
migraines ("Just depends, couple times a week") (R. 52), lasting
6-7 hours.  (Id.)  When he gets a migraine, he said he was
unable to do his daily activities – "just lay in bed."  (R. 53).
If credited – either as reported by Dr. Manger or as reported by
plaintiff, that condition certainly would interfere with his
ability to perform all sedentary work without the testimony of a
vocational expert, it is not clear to what extent this migraine
headache condition would interfere with plaintiff's ability to
perform sedentary work.  There was no countervailing medical
opinion or other evidence on his migraine headaches.
Accordingly, the Court remands the case for further
consideration, assessment and explanation of the claimant's
undisputed migraine headaches alone and in conjunction with his
other impairments, and if appropriate for the taking of
vocational expert testimony.  Finally, the ALJ should consider a
consultative examination and attempt to get further records from

Dr. Manger.[5]

## C. The ALJ Was Not Required to Present Evidence From a Vocational Expert When Making His Determination that Plaintiff Had the RFC to Perform the Full Range of Sedentary Work

Plaintiff argues that the ALJ's failure to present any evidence from a vocational expert or consultant prior to or in conjunction with his determination that plaintiff has the RFC to perform the full range of sedentary work is reversible error. (ECF No. 12-1, 6).  Plaintiff correctly notes that the presence of a vocational expert or consultant may not only be helpful, but may be required in more complex cases.  (ECF No. 12-1, 6). See Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983) (finding that a vocational expert was necessary when a plaintiff had a combination of exertional and non-exertional impairments). Plaintiff argues that the plaintiff's case is a "complex situation that required vocational expert testimony" as plaintiff's testimony and medical record establish non-exertional limitations.  (ECF No. 12-1, 7).

Defendant argues that the ALJ properly relied on the grid rules to make a determination that plaintiff is not disabled. (ECF No. 16-1, 18).  The purpose of the grid rules is to determine a person's "ability to engage in substantial gainful

_____

[5] The Court recognizes and appreciates the Commissioner's previous attempts to get information as possible from Dr. Manger.  See (R. 261-269).

activity in other than his or her vocationally relevant past work." 20 C.F.R. pt. 404, subpt. P, app. 2. The grid rules take into account various vocational factors such as a person's age, education, work history in tandem with the person's RFC. Id. In this case, the ALJ applied grid rules 201.25 and 201.26, both which led to a conclusion of "not disabled." (ECF No. 16-1, 19); (R. 30). Defendant notes this Court's decision in Beard v. Astrue, No. BPG-10-2378, 2011 WL 3880417, *3, in which the Court held that "[a]n ALJ may exclusively rely on Guidelines even though there are nonexertional limitations . . . if the nonexertional limitations do not significantly diminish a claimant's RFC "to perform work of which he is exertionally capable."

Substantial evidence supports the ALJ's decision not to consult a vocational expert before or in conjunction with his finding that the plaintiff was not disabled. The ALJ noted that the plaintiff had "no additional nonexertional limitations" that would affect the final determination of "not disabled." (R. 30). Specifically, the ALJ found that the plaintiff's "pain and any other nonexertional symptoms (e.g., fatigue), are not severe enough to significantly interfere with the claimant's ability to perform a full range of sedentary work on a regular

and consistent basis."6   (R. 29).   Plaintiff argues that his
testimony and medical record establish both pain and mental
nonexertional limitations, which should have been considered
when determining whether or not the plaintiff was found to be
disabled.  (ECF. No. 12-1, 7).  The Court agrees with plaintiff
insofar as the ALJ failed to consider, assess and explain
plaintiff's migraine headache condition.

As described in detail above within this opinion, the ALJ
correctly found that the plaintiff's nonexertional limitations
as related to his back and leg conditions did not rise to the
level that required consideration in the final RFC.  The ALJ's
finding that the nonexertional limitations as to his back and
leg conditions were "not severe enough to significantly
interfere with the claimant's ability to perform a full range of
sedentary work on a regular and consistent basis" was supported
by substantial evidence.  (R. 29).  However, the Court cannot
predict what the ALJ might find once he properly analyzes the
migraine headache condition.  Accordingly, the testimony of a
vocational expert may be necessary on remand.

## VI. Conclusion

The Court DENIES plaintiff's motion for summary judgment

---

6 The ALJ's evaluation of the severity of the plaintiff's subjective forms
the basis for one of the plaintiff's arguments for error.

(EFC No. 12-1), DENIES defendant's motion for summary judgment (EFC No. 16), and REMANDS the case to the Commissioner for further proceedings consistent with this Opinion.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge